UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| THE WILD BIRD CENTERS OF AMERICA, INC., a Maryland Corporation,<br><br>Plaintiff located at:<br>  7370 MacArthur Blvd. (Montgomery County)<br>  Glen Echo, Maryland 20812<br><br>            Plaintiff,<br><br>    v.<br><br>WISH I COULD FLY, INC.,<br>  a Pennsylvania Corporation, and<br><br>MARSHA PEARSON,<br>  a Resident of Pennsylvania,<br><br>All Defendants located at:<br>  8785 Duveen Drive<br>  Glenside, Pennsylvania 19038<br><br>            Defendants. | C.A. No. |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' sale of unapproved products in their store and failure to comply with in-term and post-termination obligations under their franchise agreement with Plaintiff The Wild Bird Centers of America, Inc. ("WBCA"). WBCA seeks monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## PARTIES

1. Plaintiff The Wild Bird Centers of America, Inc. is a corporation organized and existing under the laws of Maryland with its principal place of business located at 7370 MacArthur Boulevard, Glen Echo, Maryland 20812. WBCA owns and licenses the WILD BIRD CENTER® trademarks and other trademarks and service marks that are licensed for use in WILD BIRD CENTER® franchises throughout the country. WBCA is the franchisor of the WILD BIRD CENTER® franchise system, which involves the development, merchandising, and sale of wild bird seed and related products utilizing special techniques and layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Defendant Wish I Could Fly, Inc. is a Pennsylvania corporation with its principal place of business at 8785 Duveen Drive, Glenside, Pennsylvania 19038. Defendant Wish I Could Fly, Inc. was a Wild Bird Center franchisee for a retail wild bird product store located at 132 Park Avenue, Willow Grove, Pennsylvania ("Defendants' Store"). Defendant Wish I Could Fly, Inc. was licensed to use the Wild Bird Center trademarks, trade names, and trade dress at Defendants' Store pursuant to a Franchise Agreement dated September 26, 2006 (the "Franchise Agreement").

3. Defendant Marsha Pearson is a natural person and, upon information and belief, is a citizen and resident of the Commonwealth of Pennsylvania. Defendant Pearson was a Wild Bird Center franchisee for Defendants' Store. Defendant Pearson was licensed to use WBCA's trademarks, trade names, and trade dress at Defendants' Store pursuant to the Franchise Agreement.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs

5. This Court has *in personam* jurisdiction over Defendants because they conduct business in this District and the events giving rise to Plaintiff's claims occurred in this District.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The WILD BIRD CENTER® Marks/The Franchise Agreement

7. WBCA owns the federally-registered WILD BIRD CENTER® and WILD BIRD CENTERS® trademarks, service marks, logos and derivations thereof (the "Marks") as well as the distinctive and well-known WILD BIRD CENTER® system, which sells wild bird seed and equipment, gardening products, pet products, and other products with a wild bird or garden motif to the public under the WILD BIRD CENTER® Marks. Among those registrations are Registration Nos. 1,536,949; 1,653,266; 1,958,065. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065.

8. The distinctive trade dress of the WILD BIRD CENTER® stores includes the signage, lettering style, color scheme, exterior and interior appearance, floor plans, and decor (including, without limitation, the green color scheme, special carpet, wall, and merchandising fixtures, and river rock flooring style), that are featured at the stores operated by WBCA licensees. In the more than twenty

3

years since the Wild Bird Center System began, millions of customers have patronized Wild Bird Center stores.

9. The WBCA trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality, and is nonfunctional.

10. The WBCA trademarks and trade dress are utilized in interstate commerce.

11. WBCA has advertised and promoted the WILD BIRD CENTER® Marks throughout the United States, including in the State of Maryland and the Commonwealth of Pennsylvania. WBCA and its predecessors have spent substantial amounts of time and money to maintain and improve the WILD BIRD CENTER® franchise system. The substantial efforts of WBCA and its predecessors include, but are not limited to: (1) the maintenance of product and service quality; (2) the development of methods of maintaining quality and uniformity of products sold by its franchise operators throughout the United States; (3) the development of uniform designs and markings for equipment provided and for packages and containers in which products are sold to consumers; (4) the development of a "Wild Bird News" newsletter and other promotional materials; (5) the licensing of the use of other trademarks of WBCA and other proprietary information to WILD BIRD CENTER® franchisees; and (6) the training and education of franchisees and store operators and development of manuals for the proper operation of a WILD BIRD CENTER® franchise. As a result of the efforts and expenditures of WBCA, the WILD BIRD CENTER® Marks have become associated in the minds of consumers with uniform products of consistently high quality, sold only in clean and attractive stores, and operated by persons following WBCA's approved sales and operating methods and procedures. The WBCA marks are assets of

inestimable value to WBCA, representing and embodying WBCA's considerable goodwill and favorable reputation.

12.     Defendants entered into the Franchise Agreement with WBCA, whereby Defendants received the license and right to operate one WILD BIRD CENTER® franchise using the WILD BIRD CENTER® trademarks and business system, in a limited territory defined as the "Willow Grove, Pennsylvania Market," as specifically identified in Exhibit A to the Franchise Agreement. Within that territory, Defendants owned and operated a WILD BIRD CENTER® franchise for several years at 132 Park Avenue, Willow Grove, Pennsylvania.

13.     Paragraph 13.F of the Franchise Agreement makes it clear that the WILD BIRD CENTER® Marks belong solely to WBCA and that Defendants' license to use the Marks was limited to usage in connection with the operation of their WILD BIRD CENTER® store. Moreover, Paragraph 13.F provides that Defendants' use of WBCA's Marks inures to the benefit of WBCA, as the exclusive owner of those Marks.

14.     Pursuant to Paragraph 21.B.9 of the Franchise Agreement, Defendants agreed that they would not engage in conduct that reflects materially and unfavorably upon the operation and reputation of the WILD BIRD CENTER® System. Moreover, pursuant to Paragraph 21.B, WBCA has the right to immediately terminate the Franchise Agreement if Defendants violate Paragraph 21.B.9.

15.     Pursuant to Paragraph 1.A of the Franchise Agreement, Defendants agreed to operate their franchise "in conformity with the Wild Bird Center System through strict adherence to [WBCA's] standards and policies as they now exist and as they may be modified from time to time."

16.     The Franchise Agreement executed by Defendants contains further acknowledgments and agreements by Defendants concerning the importance of maintaining WBCA's system standards. For

5

example, Paragraph 1 provides that "[c]ompliance by franchisees with [WBCA's] standards and policies in conjunction with the Wild Bird Center System trade name and trademark provides the basis for the valuable goodwill and acceptance of Wild Bird Centers."

17.     Pursuant to Paragraphs 14 and 14.A-Q of the Franchise Agreement, Defendants agreed that every component of the Wild Bird Center System is important to WBCA and to the operation of any Wild Bird Center, and that Defendants would comply with the entire Wild Bird Center System.

18.     Pursuant to Paragraphs 14.L and 20 of the Franchise Agreement, Defendants agreed to offer all WBCA private label and core inventory products for sale and to purchase all of their inventory only from suppliers approved by WBCA.

19.     Paragraph 21.A.1 of the Franchise Agreement provides that it is a material violation of the Franchise Agreement if Defendants fail to comply with the standards prescribed by the manuals and/or the Wild Bird Center System.

20.     Pursuant to Paragraph 13.A of the Franchise Agreement, Defendants agreed they would not engage in, or acquire any financial or beneficial interest in, any retail business which is similar to their Wild Bird Center store.

21.     Pursuant to Paragraph 13.K of the Franchise Agreement, Defendants agreed not to have an internet website for products or services sold at their Wild Bird Center store that can be accessed by means other than through a link from WBCA's website.  Pursuant to Paragraph 21.A.6, Defendants agreed that doing so would be a material violation of the Franchise Agreement.

22.     Paragraph 21.A.7 of the Franchise Agreement provides that it is a material violation of the Franchise Agreement to (1) knowingly sell products other than those [WBCA] has designated for sale in [Defendants'] Store; (2) knowingly sell products which fail to conform to WBCA's specifications

for those products; (3) fail to offer WBCA's private label products or core inventory for sale in [Defendants'] Store; or (4) purchase inventory from unapproved suppliers.

23. Paragraph 21.A the Franchise Agreement provides that in the event Defendants commit a breach enumerated in Paragraphs 21.A.1-15 of the Franchise Agreement, they are entitled to a written notice of default and thirty (30) days to cure the default.

24. Paragraph 21.A of the Franchise Agreement further provides that in the event Defendants fail to cure the default within the time provided, WBCA has the right to immediately terminate the Franchise Agreement.

25. In return for their right to display the Marks and participate in WBCA's franchise system, Defendants agreed to pay monthly service and marketing fees to WBCA. Pursuant to Paragraph 10 of the Franchise Agreement, Defendants agreed to pay a monthly service fee to WBCA equal to four-and-a-half percent (4.5%) of Defendants' gross monthly revenues. Pursuant to Paragraph 6 of the Franchise Agreement, Defendants also agreed to pay a $225.00 monthly cooperative marketing fee to WBCA.

26. Paragraphs 2.B-C of the Franchise Agreement provide that the Agreement was for a term of ten years, or until November 4, 2016, with an option for renewal.

### Post-Termination Obligations

27. Upon the termination of their franchise rights, Defendants agreed to remove immediately from the premises of their store all of WBCA's Marks. Paragraphs 23.A and 23.A.2-3 of the Franchise Agreement provide:

> In the event of termination or expiration of this Agreement for any reason, or in the event that [Defendants] desire prior to the termination of this Agreement, to discontinue the operation of the Store for any reason other than a sale to a third person who has been approved by [WBCA], [Defendants] agree to . . . immediately discontinue the use of the Wild Bird Center System and its associated trade dress, trade names, service marks,

7

copyrights and trademarks, and immediately discontinue the use of any and all signs and printed goods bearing those names and marks or any reference to them . . . [and] take such action as may be required to discontinue use of the Wild Bird Center trade names, trademarks or service marks in any business licenses, fictitious name registrations or equivalent registrations.

28. Pursuant to Paragraph 13.C of the Franchise Agreement, Defendants acknowledged that the Wild Bird Center System and benefits derived from it are the sole property of WBCA. Pursuant to Paragraph 13.D, Defendants agreed that they would not appropriate, use, or duplicate the Wild Bird Center System, or any portion of it, or any computer software used in connection with it, for use at any retail business other than their Wild Bird Center store.

29. Pursuant to Paragraph 13.E of the Franchise Agreement, Defendants acknowledged "that all practices, products, know-how and other proprietary information, including the entire contents of the Manuals, disclosed to you pursuant to the License are the confidential trade secrets of WBCA." Under that same Paragraph, Defendants also agreed that they would not use any such information in any other business or in any manner not specifically authorized or approved in writing by WBCA.

30. Pursuant to Paragraph 23.A.9 of the Franchise Agreement, Defendants also agreed to "immediately remove from the Store premises all elements of [WBCA's] trade dress and all signs, posters, graphics, furniture, furnishings, advertising, promotional materials, forms, interior or exterior decor and any other articles bearing any of the Wild Bird Center trade names, trademarks or service marks."

31. Pursuant to Paragraph 23.A.4, Defendants further agreed to immediately return to WBCA all copies of the manuals, the point-of-sale computer software, and all other material containing WBCA trade secrets, operating instructions, or business practices. Pursuant to Paragraphs 23.A.6-7, Defendants

also agreed to assign the telephone service, listing, and numbers to WBCA, and any customer telephone numbers, files, and records.

32.     Defendants also accepted a reasonable post-termination covenant against competition as part of the Franchise Agreement. Pursuant to Paragraph 13.B, Defendants agreed that:

> For a period of 24 months after termination of this Agreement for any reason, [Defendants] will not engage in or acquire any financial or beneficial interest (including, without limitation, any interest in corporations, partnerships, trusts, unincorporated associations or joint ventures) in, or become a landlord of any retail business which is similar to the Store, within the Licensed Territory or within the licensed territory of any other Wild Bird Center franchisee or any Wild Bird Crossing franchisee or within a 20-mile radius of the perimeter of the Licensed Territory or the licensed territory of any other Wild Bird Center or Wild Bird Crossing store which [WBCA] or any of our affiliates operate.

33.     Pursuant to Paragraph 13, Defendants agreed that damages alone cannot compensate WBCA if there is a violation of the non-competition covenant in the Franchise Agreement. Defendants also agreed that any alleged violation of the non-competition covenant would give WBCA the right to seek injunctive relief, in addition to any other remedies that may be available to WBCA at law or in equity.

34.     Pursuant to Paragraph 27 of the Franchise Agreement, Defendants agreed to compensate WBCA for any costs and expenses, including reasonable attorneys' fees, WBCA incurred if it prevails in a judicial proceeding to enforce the Agreement or on a claim for amounts owed.

<b><u>Defendants' Breaches of the Franchise Agreement</u></b>

35.     Defendants breached the Franchise Agreement by selling unapproved products and failing to comply with their in-term obligations.

36.     Specifically, Defendants sold unauthorized bird seed products under a competing label, "Philly Wild Bird," while simultaneously discontinuing the sale of the WBCA private label bird seed

products that they were required to sell pursuant to the Franchise Agreement. Defendants sold the unapproved bird seed products while continuing to use the WILD BIRD CENTER® Marks at their store. Defendants also launched an independent website on the internet that advertises the "Philly Wild Bird" products, displays the WILD BIRD CENTER® trademarks and trade names without WBCA's permission, and purports to be "sponsored" by their Wild Bird Center store. Defendants' website is accessed by means other than through a link from WBCA's website.

37.     Upon learning of Defendants' actions, WBCA sent a Notice of Default and Notice to Cure to Defendants, dated September 3, 2009. That Notice informed Defendants that their actions constituted defaults under the Franchise Agreement, and provided them with 30 days from receipt of the Notice in which to cure the defaults and bring their store into conformity with the Franchise Agreement.

38.     Defendants failed to cure the defaults within the time provided in the Notice of Default and Notice to Cure.

39.     Defendants continued selling unauthorized bird seed products under a competing label, "Philly Wild Bird." Defendants also continued to refuse to offer for sale the WBCA private label bird seed products that they were required to sell pursuant to the Franchise Agreement.

40.     Pursuant to the applicable provisions of the Franchise Agreement, on October 29, 2009, WBCA served Defendants with a Notice of Default and Termination, terminating the Franchise Agreement, and demanding that they cease using WBCA's trade names and proprietary marks immediately upon the effective date of termination. In addition, the Notice demanded that Defendants stop immediately their use of the WILD BIRD CENTER® Marks, abide by their post-term covenant not to compete, and comply with the Franchise Agreement's other post-termination obligations.

41. Despite WBCA's notice of termination, Defendants continue to operate a business that competes with WBCA and its franchisees at the same location as Defendants' formerly licensed Wild Bird Center store.

42. Defendants continue, upon information and belief, to use the WILD BIRD CENTER® trademarks and trade dress at their store to sell wild bird seed under the label "Philly Wild Bird" and related products to the public that are not authentic WILD BIRD CENTER® products. Defendants also continue, upon information and belief, to sell non-WBCA products to some of the same customers that they serviced when operating their former WILD BIRD CENTER® franchise. Defendants further continue to display the WILD BIRD CENTER® proprietary marks and trade names on their internet website.

**COUNT I**
**(Breach of Contract – In-Term Violations of Franchise Agreement)**

43. WBCA incorporates herein by reference the preceding paragraphs 1 through 42 of this Complaint.

44. The violations of the in-term covenant not to compete and the obligation to offer all required products for sale, along with the sale of unapproved products and use of an unauthorized internet website after notice and opportunity to cure, constitute breaches of the Franchise Agreement and provide grounds for terminating that Agreement.

45. Based on these defaults, WBCA sent Defendants a written notice of termination dated October 29, 2009, terminating the Franchise Agreement.

46. Defendants continue to use the WBCA Marks and other materials to operate a wild bird seed store as if they were a licensed WBCA franchisee.

47. Defendants have failed to comply with their post-termination obligations.

48. As a direct and proximate result of these breaches, WBCA has incurred substantial losses, fees, and expenses in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract – Covenant Not to Compete)

49. WBCA incorporates herein by reference the preceding paragraphs 1 through 48 of this Complaint.

50. Pursuant to Paragraph 13.B of the Franchise Agreement, Defendants agreed to refrain from competing with WBCA and its other franchisees upon the termination of their franchise rights. Pursuant to Paragraphs 13.B-F, Defendants agreed for a period of two years immediately following the termination of the Franchise Agreement that they would not: (1) operate or acquire an interest in a similar retail business within the territory granted to them in the Franchise Agreement; (2) operate or acquire an interest in a similar retail business within 20 miles of the territory granted to them in the Franchise Agreement; (3) use any portion of WBCA's software or its business system in any other retail business; (4) use any confidential information from WBCA's manuals or its business system in any other retail business; (5) use WBCA's Marks for any purpose other than to operate their Wild Bird Center business; (6) operate or acquire an interest in a similar retail business within the territory of any other WBCA franchisee; and (7) operate or acquire an interest in a similar retail business within 20 miles of the territory granted to any other WBCA franchisee.

51. Defendants breached Paragraphs 13.B-F of the Franchise Agreement by continuing to own, maintain, and have an interest in a business that sells similar services at the same location assigned to Defendants during the term of the Franchise Agreement.

52. Defendants have a legitimate business interest in their valuable confidential business information, substantial business relationships with existing and prospective customers, and the goodwill and reputation associated with WBCA's trademarks and trade names in the territories governed by the franchise agreements with their franchisees.

53. As a result of Defendants' operation of a directly competitive business at the same location as their former WILD BIRD CENTER® franchise, WBCA and its other franchisees in Pennsylvania and elsewhere have suffered irreparable harm and will continue to suffer irreparable harm.

54. WBCA has no adequate remedy at law to protect its substantial business and property rights, and the damage from Defendants' activities is considerable and continuing and thus not capable of ascertainment at this time.

55. The non-competition provision in the Franchise Agreement is reasonably necessary to protect WBCA's legitimate business interests.

56. As a result of Defendants' actions, WBCA has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

### COUNT III
### (Trademark Infringement)

57. WBCA incorporates herein by reference the preceding paragraphs 1 through 56 of this Complaint.

58. After the termination of their Franchise Agreement, Defendants continued to identify their store as a WILD BIRD CENTER® franchise and continued to use WBCA's Marks to sell wild bird seed and related products to the public. Defendants' conduct constitutes an infringement on the

13

trademark rights that are owned by WBCA, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

59. Through their unlawful use of WBCA's Marks, Defendants have profited and WBCA has been damaged financially.

60. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

61. As a result of Defendants' actions, WBCA has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT IV**
**(Trade Dress Infringement)**

62. WBCA incorporates herein by reference the preceding paragraphs 1 through 61 of this Complaint.

63. Defendants' store is identified by signs, exterior and interior appearance, packaging, and other items on which the words "Wild Bird Center" or "Wild Bird Centers" appear and in the same distinctive green color scheme, carpet, and decorative wall fixtures as WBCA uses for the Wild Bird Center stores operated by WBCA licensees.

64. The use by Defendants of WBCA's trade dress outside the scope of the Franchise Agreement constitutes a false designation of the origin of Defendants' store, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of those shops with the Wild Bird Center store operated by WBCA licensees. Such adoption of WBCA's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

65. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

66. As a result of the infringement of WBCA's trade dress by Defendants, WBCA has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Federal Unfair Competition)

67. WBCA incorporates herein by reference the preceding paragraphs 1 through 66 of this Complaint.

68. The use in commerce of WBCA's trademarks and trade names by Defendants outside the scope of the Franchise Agreement and without the consent of WBCA is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of WBCA's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

69. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

70. As a result of the actions of Defendants, WBCA has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a. For an injunctive order ratifying and enforcing the termination of the Franchise Agreement;

b. For a preliminary and permanent injunction against Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them, preventing them from owning, maintaining, engaging in, or having any interest in any other business which sells any products similar to those sold as part of the WILD BIRD CENTER® franchise system for the period of two years from the date Defendants are first in compliance with their post-termination obligations under the Franchise Agreement;

c. For a preliminary and permanent injunction preventing Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them from failing to comply with all post-termination obligations in the Franchise Agreement;

d. For an accounting of Defendants' revenue, earnings, and profits for the purpose of determining unpaid service fees for the remaining term of the Franchise Agreement;

e. For an award of all unpaid service and marketing fees due for the remaining term of the Franchise Agreement, plus interest;

f. For damages for Defendants' unauthorized use and/or display of Plaintiff's registered Marks;

g. For an award of damages to be determined at trial for Defendants' wrongful acts and conduct;

  h. For an award of an amount equal to three (3) times the earnings and profits obtained by Defendants from their wrongful infringement of WBCA's trademarks and trade names and from their other wrongful acts;

  i. For an award of prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

  j. For Plaintiff's costs, disbursements, costs of investigation and attorneys' fees incurred in this action pursuant to contract and the terms of the Lanham Act; and

  k. For such other relief as the Court deems just and appropriate.

         Respectfully submitted,

         /s/ Jimmy Chatsuthiphan
         Eric L. Yaffe (D. Md. Bar No. 15595)
         Jimmy Chatsuthiphan (D. Md. Bar No. 17131)
         GRAY, PLANT, MOOTY, MOOTY
          & BENNETT, P.A.
         2600 Virginia Avenue, N.W., Suite 1111
         Washington, DC 20037
         Telephone: (202) 295-2200
         Facsimile: (202) 295-2250
         eric.yaffe@gpmlaw.com
         jimmy.chatsuthiphan@gpmlaw.com

         *Attorneys for Plaintiff*
         The Wild Bird Centers of America, Inc.

Dated: October 30, 2009